# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

---

**KAY STALEY; SCOTT WEITZENHOFFER;**
**WILFRED LYON; STACIE GONZALEZ;**
**KRISTIN AMES; and FREEDOM FROM RELIGION**
**FOUNDATION, INC.,**

        **Plaintiffs,**

**v.**

                             **Case No: 4:11-CV-02585**

**TEXAS GOVERNOR RICK PERRY,**

        **Defendant.**

---

## PLAINTIFFS' BRIEF IN SUPPORT OF
## PRELIMINARY INJUNCTION

---

Randall L. Kallinen, State Bar No. 00790995
Law Office of Randall L. Kallinen PLLC
Federal Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: (713) 320-3785
Facsimile: (713) 893-6737
E-mail: attorneykallinen@aol.com

**Randall L. Kallinen, State Bar No. 00790995**
**Law Office of Randall L. Kallinen PLLC**
**Federal Bar No. 19417**
**511 Broadway Street**
**Houston, Texas 77012**
**Telephone: (713) 320-3785**
**Facsimile: (713) 893-6737**
**E-mail: attorneykallinen@aol.com**

**Richard L. Bolton, Esq., Bar No. 1012552**
**Boardman, Suhr, Curry & Field LLP**
**1 South Pinckney Street, 4th Floor**
**P. O. Box 927**
**Madison, Wisconsin 53701-0927**
**Telephone: (608) 257-9521**
**Facsimile: (608) 283-1709**
**E-mail: rbolton@boardmanlawfirm.com**

**ATTORNEYS FOR PLAINTIFFS**

Plaintiffs' Brief in Support of Preliminary Injunction

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION………………………………………………………..    1

II.      NATURE AND STATE OF THE PROCEEDING………………………….    2

III.     STATEMENT OF ISSUE AND STANDARD OF REVIEW…………………    3

IV.     STATEMENT OF RELEVANT FACTS……………………………………    3

      A.      The Parties………………………………………………………    3

      B.      Governor Perry Promotes Exclusively Christian Prayer Rally…………    4

      C.      Governor Perry Aligns with a Conservative Evangelical Christian
          Organization……………………………………………………………    6

      D.      Governor Perry Urges Christian Prayer For All Texans………………..    7

      E.      The Prayer Rally Is Unmistakably Christian……………………………    9

      F.      Governor Perry's Christian Prayer Rally is Divisive and
          Discriminatory………………………………………………………..    11

V.      SUMMARY OF ARGUMENT……………………………………………...    12

VI.     THE PLAINTIFFS HAVE ESTABLISHED A SUBSTANTIAL
       LIKELIHOOD OF SUCCESS ON THE MERITS……………………………...    13

      A.      Governor Perry's Christian Prayer Rally Violates Virtually
          Every Premise of the Establishment Clause…………………………...    13

          1.      Larson v. Valente No Preference Test…………………………..    14

          2.      A Christian Prayer Rally Violates the Lemon Test……………..    15

      B.      Government Speech Endorsing Religion is Prohibited
          Under the Establishment Clause…………………………………………    18

      C.      Actual Legal Coercion is Not a Required Element of an
          Establishment Clause Violation…………………………………………    19

      D.      Governor Perry's Endorsement of Religion is Directed at the
          Individual Plaintiffs……………………………………………………...    20

     E.     Governor Perry's Alignment with the American Family Association
            Preferentially Benefits FFRF's Competitor………………………………    21

VII.    GOVERNOR PERRY'S ACTIONS IRREPARABLY HARM
        THE PLAINTIFFS…………………………………………………………………    22

VIII.   GOVERNOR  PERRY WILL NOT BE HARMED BY A
        PRELIMINARY INJUNCTION, NOR WILL THE PUBLIC
        INTEREST BE DISSERVED………………………………………………………...    23

CONCLUSION………………………………………………………………………………….    24

CERTIFICATE OF SERVICE…………………………………………………………….    25

**Page**

<u>Cases</u>

<u>Abington School District v. Schempp</u>, 374 U.S. 203, 222-23 (1963)………………………. 19

<u>Alliance of Automobile Manufacturers v. Hull</u>, 137 F. Supp. 2d 1165, 1173
(D. AZ 2001)……………………………………………………………………………..... 12

<u>Board of Education of Kiryas Joel Village School District v. Grumet</u>,
512 U.S. 687, 703, 114 S. Ct. 2481, 129 L. Ed. 2d 546 (1994)………………………… 14

<u>Board of Education v. Westside Community School v. Mergens</u>,
496 U.S. 226, 250, 110 S. Ct. 2356, 110 L. Ed.2d 191 (1990)………………………… 18

<u>City of Richmond v. J. A. Croson</u>, 488 U.S. 469, 493, 109 S. Ct. 706,
102 L. Ed.2d 854 (1989)……………………………………………………………….. 21

<u>Committee for Public Education and Religion Liberty v. Nyquist</u>,
413 U.S. 756, 786 (1973)………………………………………………………………… 19

<u>County of Allegheny v. American Civil Liberties Union-Greater</u>
<u>Pittsburgh Chapter</u>, 492 U.S. 573, 590-91, 109 S. Ct. 3086,
106 L. Ed. 2d 472 (1989)……………………………………………………………. 14,16,19

<u>Croft vs. Perry</u>, 624 F.3d 157, 165-66 (5th Cir. 2010)………………………… 14,15,17

<u>Doe v. Duncanville Independent School District</u>, 994 F.2d 160, 166 (5th Cir. 1993)………. 12

<u>Engel v. Vitale</u>, 370 U.S. 421, 430 (1962)…………………………………………… 19

<u>Freiler vs. Tangipahoa Parish Board of Education</u>,
195 F.3d 337, 346 (5th Cir. 1999)………………………………………………… 15

<u>Janvey v. Alguire</u>, 628 F.3d 164, 179 (5th Cir. 2010)………………………………. 12

<u>K. P. v. LaBlanc</u>, 627 F.3d 115, 124 (5th Cir. 2010)……………………………... 13

<u>Lake Dreams v. Taylor</u>, 932 F.3d 1103, 1109 (5th Cir. 1991)…………………………… 13

<u>Larson v. Valente</u>, 456 U.S. 228, 244, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982)………..... 14

<u>Lee v. Weisman</u>, 505 U.S. 577, 604-05 (1992)……………………………………….. 19

<u>Lemon vs. Kurtzman</u>, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971)………. 15,17,18

Lynch vs. Donnelly, 465 U.S. 668, 687, 104 S. Ct. 1355, 79 L. Ed. 2d 604
(1984)………………………………………………………………………… 16,17

Meza v. Livingston, 607 F.3d 392, 412 (5th Cir. 2010)………………………………… 13

McCreary County v. ACLU, 545 U.S. 844, 860, 125 S. Ct. 27, 22,
162 L. Ed. 2d 729 (2005)………………………………………………………… 13

Meltzer v. Board of Public Instruction of Orange County, Florida,
548 F.2d 559, 579 (5th Cir. 1977)……………………………………………….. 19

Morgan v. Swanson, 627 F.3d 170, 182 (5th Cir. 2010)………………………………… 18

Paulsson Geophysical Services Inc. v. Sigmar, 529 F. 3d 303, 309 (5th Cir. 2008)…...... 3

Planned Parenthood of South Carolina v. Rose, 361 F.3rd 786, 790 (4th Cir. 2004)…...... 22

Pleasant Grove v. Summum, 555 U.S. 460, 129 S. Ct. 1125, 1131-32 (2009)………….. 18

Pounds v. KTY Independent School District,
730 F. Supp.2d 636, 653 (S. D. TX 2010)……………………………………………13,15,16

Sherley v. Sebelius, 610 F.3d 69, 72 (D.C. Cir. 2010)………………………………… 21

Suhre v. Haywood Co., 131 F.3d 1080, 1086 (4th Cir. 1997)………………………….. 23

Wallace v. Jaffree, 472 U.S. 38, 52, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985)………… 14

Washegesic v. Bloomingdale Public Schools, 33 F.3d 679, 682 (6th Cir. 1994)……… 20

Wright, Miller and Kane, Federal Practice and Procedure:  Civil 2nd §2948.41………. 12

## I.     INTRODUCTION.

The Defendant, Governor Rick Perry, is actively sponsoring and endorsing a Christian prayer rally, to be held on August 6, 2011, at Reliant Stadium in Houston, Texas.  The Governor's purpose is to give governmental endorsement to religion, including by exhorting all citizens to come together on August 6, 2011, in Christian prayer and fasting.  The event sponsored and promoted by the governor is unmistakably Christian with explicit entreaties to Jesus Christ the Savior.  The Governor has issued an official Proclamation of a Day of Prayer and Fasting to support the prayer rally, and he has issued public videos promoting the event.  Unsolicited robo-calling, with Governor Perry speaking, even has occurred in the Houston area promoting the prayer extravaganza.  The governor also has preferentially aligned to co-host the prayer event with the American Family Association, a conservative evangelical Christian organization.

Governor Perry's actions constitute a flagrant violation of the Establishment Clause.  The Governor is expressly promoting religion in general, and Christianity in particular.  In doing so, moreover, the governor has requested that all citizens of Texas join in prayer, including the plaintiffs, who are atheists and non-believers.  The Christian prayer rally being promoted for August 6 is patently exclusionary of non-believers like the plaintiffs.  The Governor, in addition, by aligning with the American Family Association, has lent the credibility and prestige of his Office to a group that competes with the plaintiff, Freedom from Religion Foundation, as well as other non-Christian organizations.  In short, a more explicit promotion of Christianity by a governor in his official capacity is practically unprecedented.

The plaintiffs seek a preliminary injunction prohibiting the defendant from continuing to sponsor, promote and endorse the prayer rally scheduled for August 6 at Reliant Stadium.  Government speech endorsing religion, like the defendant's, clearly violates the Establishment

1

Clause, including by sending a message that religion is preferred and that persons who believe in the Christian faith are political insiders. No effective remedy is available to the plaintiffs, moreover, other than an injunction against the defendant's continued violations of the Establishment Clause.

The plaintiffs do not seek an injunction prohibiting Governor Perry from privately exercising his religious beliefs. The plaintiffs do not even seek an injunction against Governor Perry's attendance at the August 6 prayer rally. Instead, the plaintiffs seek an order prohibiting the defendant from engaging in official sponsorship of religion, including by continued promotion of the event. The plaintiffs further request an order from the court prohibiting the defendant from participating in the official program of the prayer rally, such as by reading his official prayer proclamation or otherwise being part of the organized agenda. The rally should not include government endorsement.

The Governor's actions in this case constitute an extraordinary disregard of the Establishment Clause. The Governor goes beyond the promotion of religion in general, which is itself prohibited by the Establishment Clause. The Governor instead deliberately and preferentially lends the prestige and credibility of the Governor's office to promote a particular religious viewpoint. The Governor's actions are highly divisive, offensive and damaging to the plaintiffs. The mixing of church and state creates a volatile and provocative situation that the Establishment Clause is intended to prevent.

## II.     NATURE AND STAGE OF THE PROCEEDING.

The plaintiffs have filed a Complaint against the defendant, Texas Governor Rick Perry, seeking injunctive relief prohibiting the defendant from continuing to promote, sponsor and endorse a religious rally scheduled for August 6, 2011, at Reliant Stadium in Houston, Texas.

The Complaint was filed on July 13, 2011, and a courtesy copy was then provided to the Texas Attorney General. The Complaint was served on July 18, 2011, and a status conference is scheduled for July 28, 2011.

## III. STATEMENT OF ISSUE AND STANDARD OF REVIEW.

The plaintiffs seek a preliminary injunction prohibiting the defendant from further promotion, sponsorship and endorsement of a prayer rally scheduled for August 6, 2011. The plaintiffs contend that the defendant's actions violate the Establishment Clause of the First Amendment to the United States Constitution.

A court should issue a preliminary injunction if the movant shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if an injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. Paulsson Geophysical Services Inc. v. Sigmar, 529 F. 3d 303, 309 (5th Cir. 2008).

## IV. STATEMENT OF RELEVANT FACTS.

### A. The Parties.

The Freedom From Religion Foundation is a non-profit membership organization that advocates for the separation of state and church and educates on matters of non-theism. FFRF is the nation's largest membership association of freethinkers (atheists, agnostics, etc.). (Gaylor Decl., ¶2.) FFRF has approximately 16,667 members, including members in every state of the United States, and more than 700 members in Texas, who are opposed to governmental establishment and endorsement of religion in violation of the Establishment Clause of the First

3

Amendment to the United States Constitution.  Most of FFRF's members are atheists, agnostics or non-believers.  (Gaylor Decl., ¶3.)

FFRF's purposes are to promote the fundamental constitutional principle of separation of state and church to educate on matters relating to non-theism.  (Gaylor Decl., ¶4.)  FFRF supports the private freedom of religion guaranteed to all citizens, but FFRF is opposed to sponsorship and promotion of religion by government officials, which is prohibited by the Establishment Clause of the First Amendment.  (Gaylor Decl., ¶5.)

FFRF is a non-profit organization that competes ideologically with churches and religious organizations, such as the American Family Association, an organization that advocates and promotes an evangelical Christian agenda that is hostile to non-believers, non-Christians, and other protected groups, including gays and lesbians.  (Gaylor Decl., ¶6.)

The individual plaintiffs in this case are members of FFRF residing in the metropolitan area of Houston, Texas.  (Gaylor Decl., ¶7.)  They are opposed to government sponsorship, promotion and endorsement of religion.  (See Staley Decl., ¶4; Weitzenhoffer Decl., ¶3.)

**B.      Governor Perry Promotes Exclusively Christian Prayer Rally.**

FFRF has received multiple complaints by Texas citizens, including FFRF members, about the prayer rally sponsored by Governor Perry with the American Family Association.  The complaints received by FFRF include objections by members to unsolicited recorded calls promoting prayer and the prayer rally by Governor Perry.  (Gaylor Decl., ¶8.)  We have also received complaints about videotaped messages and interviews by Governor Perry in which the Governor urges Texas citizens to pray to Jesus and to attend the Christian-based prayer rally that he has organized for August 6, 2011, at Reliant Stadium in Houston.  (Gaylor Decl., ¶9; Weitzenhoffer Decl., ¶7.)

Governor Perry, in fact, has released a video invitation to the prayer rally in which he encourages people to pray and fast "like Jesus did" for the nation's problems, to ask for forgiveness, and "to make plans to be part of something even bigger than Texas." The full transcript of the invitation is as follows:

> This is Governor Rick Perry and I'm inviting you to join your fellow Americans for a day of prayer and fasting on behalf of our nation. As an elected leader, I am all too aware of government's limitations when it comes to fixing things that are spiritual in nature. That's where prayer comes in, and we need it more than ever. With the economy in trouble, communities in crisis and people adrift in a sea of moral relativism, we need God's help. That's why I'm calling on Americans to pray and fast like Jesus did and as God called the Israelite to do in the Book of Joel, I sincerely hope you will join me in Houston on August the sixth and take your place in Reliant Stadium with praying people asking God's forgiveness, his wisdom and provision for our state and nation. To learn more, visit TheResponseUSA.com then make plans to be part of something even bigger than Texas. (See Ex. 1 to Gaylor Decl.)

Governor Perry also participated in a radio broadcast on American Family Association radio, on July 14, 2011. (See Ex. 2, Gaylor Decl.). During the interview, Governor Perry acknowledged the Christian emphasis of the August 6th prayer rally:

> I can't wait till the sixth of August rolls around and we fill up Reliant Stadium with people who are Christ-loving and realize that, you know, our country's gotten off track. And just like back in the days of old, God is the same God we had from the days of Israel. And in the Book of Joel it said to blow the trumpet and to assemble the people and to go into a day of fasting and prayer to ask for God's direction relative to uh, our, um, our direction. And that's exactly what we're doing. (Ex. 2 at 1, Gaylor Decl.)

Governor Perry further described the lofty goals of scheduled prayer rally as follows:

> Well, obviously I hope there are literally hundreds of thousands if not millions of people across this country that will that day go into a spiritual, truthful fasting and praying mode, lifting up this country. And you know, just ask for God's will to be done. I mean, that's simply what we're asking people to do, nothing more, nothing less. (Ex. 2 at 3, Gaylor Decl.)

Governor Perry also described the objective of the prayer rally as getting together to pray for God's help and guidance, and "that's the reason that we've brought together these Christian leaders of all races, all ages, all Christian denominations." (Ex. 2 at 2, Gaylor Decl.) The Governor then provided details of the scheduled prayer rally, noting that "the service actually will begin at 10 o'clock and I believe run to five." (Ex. 2 at 3, Gaylor Decl.)

Governor Perry also described the prayer rally scheduled for August 6th to a group of business leaders in the following terms:

> On Aug. 6th of this year, 2011, we are going to have a day of prayer and fasting. And it's going to be the real deal. It's not going to be some program where we line up a dozen political figures to come in and talk. It's going to be people standing on that stage, projecting and proclaiming Jesus Christ our Lord and Savior at Reliant Stadium in Houston. (Ex. 3 at 2, Gaylor Decl.)

### C. Governor Perry Aligns with a Conservative Evangelical Christian Organization.

Governor Perry's association with the American Family Association in promoting and hosting the prayer rally at Reliant Stadium gives significant prestige and credibility to the American Family Association in the process. (Gaylor Decl., ¶6.) The Governor's preferential relationship with the American Family Association, by contrast, is disadvantageous to FFRF, which cannot trade on the prestige and visibility of the highest elected official in the State of Texas. (Gaylor Decl., ¶7.)

By choosing American Family Association to co-host the Governor's prayer rally, the Governor has preferentially favored this Christian evangelical association, to the disadvantage of other competing groups like FFRF, on the basis of religion. (Gaylor Decl., ¶8.)

The stated mission of the American Family Association, according to its website, is "to inform, equip, and activate individuals to strengthen the moral foundations of American culture,

Plaintiffs' Brief in Support of Preliminary Injunction

and give aid to the church here and abroad in its task of fulfilling the Great Commission." (Ex. 4, Gaylor Decl.)

The American Family Association "believes that God has communicated absolute truth to mankind, and that all people are subject to the authority of God's Word at all times. AFA believes that a culture based on biblical truth best serves the well-being of the nation and its families, in accordance with the alleged vision of the Nation's founding documents; and that personal transformation through the Gospel of Jesus Christ is the greatest agent of biblical change in any culture." (Gaylor Decl. ¶20.)

The American Family Association espouses a very conservative evangelical Christian perspective and it has been outspokenly hostile and disdainful of non-Christian believers, non-believers, atheists, and other protected groups, including gays and lesbians. (Gaylor Decl., ¶25.)

**D.    Governor Perry Urges Christian Prayer For All Texans.**

The prayer rally initiated by Governor Perry for August 6, 2011, was preceded by an official proclamation from the Governor declaring August 6, 2011, to be an Official Day of Prayer and Fasting for Our Nation. (See Ex. 5, Gaylor Decl.) Governor Perry's Official Proclamation includes the following exhortation to participate in the religious practice of prayer, particularly Christian prayer:

> In times of trouble, even those who have been granted power by the people, must turn to God in humility for wisdom, mercy and direction. In the spirit of the Book of Joel, Chapter 2, Verses 15-16, I urge a solemn gathering of prayer and fasting. As those verses admonish: "15 Blow the trumpet in Zion, declare a holy fast, call a sacred assembly . . . 16 Gather the people, consecrate the assembly . . ." As Jesus prayed publicly for the benefit of others in John 11:41-42, so should we express our faith in this way.
>
> THEREFORE, I invite my fellow Texans to join me on August 6 at Reliant Stadium in Houston as we pray for unity and

righteousness -- for this great State, this great nation and all
mankind.  I urge all Americans of faith to pray on that day for the
healing of our country, the rebuilding of our communities and the
restoration of enduring values as our guiding force.

Governor Perry concluded his Proclamation by declaring August 6, 2011, to be "a Day of Prayer

and Fasting for Our Nation," and he "urged the appropriate recognition" of the Day of Prayer and

Fasting by the citizens of Texas.  Governor Perry affixed his official signature to the

Proclamation, dated May 23, 2011, "in official recognition whereof."  (Gaylor Decl., ¶¶28-29.)

Governor Perry since has publicly and extensively promoted the prayer rally, including in

public letters addressed to all Texans, as well as "Fellow Americans."  (Ex. 6, Gaylor Decl.)  In a

public letter included on "TheResponseUSA.com" website, bearing the State of Texas Official

Seal, Governor Perry urges individuals to join "with praying people" on August 6 at Reliant

Stadium.  The Governor's open letter includes the following statements:

Some problems are beyond our power to solve, and according to
the Book of Joel, Chapter 2, this historic hour demands a historic
response.  Therefore, on August 6, thousands will gather to pray
for a historic breakthrough for our country and a renewed sense of
moral purpose.

I sincerely hope you'll join me in Houston on August 6 and take
your place in Reliant Stadium with praying people asking God's
forgiveness, wisdom and provision for our state and nation.  There
is hope for America.  It lies in Heaven, and we will find it on our
knees.

The letter by Governor Perry further states that "as a nation, we must come together and

call upon Jesus to guide us through unprecedented struggles, and thank Him for the blessings of

freedom we so richly enjoy."  (See Ex. 6, Gaylor Decl.)

The prayer rally that Governor Perry has initiated for August 6, 2011, at Reliant Stadium,

is described on the Governor's website, and linked to the website set up by the American Family

Association, which is collaborating with Governor Perry on the prayer rally; the official website

for the prayer rally is located at "TheResponseUSA.com."  (Gaylor Decl., ¶33.)  The official

website for the rally identifies the event as "The Response: a call to prayer for a nation in crisis."

(See Ex. 7, Gaylor Decl.)

The website for The Response includes Governor Perry's open letter exhorting

participation in the prayer rally by Christian believers.  Governor Perry is identified as the

"Initiator of The Response" on the website for the event.  (Gaylor Decl., ¶36.)

### E.    The Prayer Rally Is Unmistakably Christian.

The website for The Response further describes the event as historic, and states that "as a

nation, we must come together, and call upon Jesus to guide us through unprecedented struggles

and thank Him for the blessings of freedom we so richly enjoy according to His grace, mercy and

kindness towards us."  (Gaylor Decl., ¶37.)

The website for The Response, linked from the Governor's website, further exhorts

citizens to turn to Jesus of the Bible, as the recognized solution to the problems confronting

Texas and the nation.  The Response website states as follows:

> Our hope is found in the One who might turn towards our nation in
> its time of great need -- if we, as a nation would turn to Him in
> repentance, prayer and fasting.  The call of God to His people in
> times of great trouble is to gather together and call on Him with
> one voice, one heart, and a unified desire to see great blessing and
> great glory come to our nation again.  The power of unified prayer
> from a humble gathering of the saints is found in the hope that He
> might answer us, and turn the tide of trouble and threats that stand
> against us.

The website for The Response, linked from the Governor's website, further describes the

event as an historic and unified breakthrough in requesting the earthly intervention of the person

of Christ:

> On August 6 thousands will gather at Reliant Stadium in Houston,
> Texas, to pray for a historic breakthrough for our country and a

renewed sense of moral purpose.  We want the presence, power, and person of Christ to fill our nation and turn the hearts of millions to righteousness, peace and joy in Him.  We want the blessing and favor of a Holy God who loves righteousness and wants to see righteousness exalt a nation in our generation.  We want to see real change across our nation that only our God can perform.  Will you join us in Houston?  Will you pray, fast and believe with us for a mighty move of God in our nation again?  There is hope for America.  It lies in Heaven, and we will find it on our knees.

The website for The Response, linked from the Governor's website, further attempts to explain why a solemn assembly of prayer and fasting is being organized, including so that citizens might "gather together, repent of their sins, and pray to God to intervene on their behalf," as directed in the Bible, Joel Chapter 2.  The website also states that in gathering together, God wants the people instructed so that they know why their nation is in peril:

God wanted the people -- from the children and nursing babes to the leaders and priests (Joel 2:16) -- to all completely understand both the nature of the crisis at hand and the only solution that would deliver them from their great crisis: God Himself.  God ordained in that hour of history that prayer would serve as the only way of escape from the mounting trouble.  Why?  Because only God has the power to solve both the internal moral decline and the external economic and military threats.  All three were unsolvable by human means and human solutions -- but God had a solution that could be found in His great mercy.

The website for The Response recites "What the Response Believes," in blatantly Christian terms, including:

1. We believe the Bible to be the inspired, the only infallible, authoritative word of God.

2. We believe that there is one God, eternally existent in three persons:  Father, Son and Holy Spirit.

3. We believe in the deity of Lord Jesus Christ, in His virgin birth, in His sinless life, in His miracles, in His vicarious and atoning death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.

10

4.    We believe that for the salvation of lost and sinful people, regeneration by the Holy Spirit is absolutely essential.

5.    We believe in the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a Godly life.

6.    We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life and that they are lost unto the resurrection of damnation.

7.    We believe in the spiritual unity of believers in our Lord Jesus Christ.  (Gaylor Decl., ¶42.)

The website for The Response also includes a videotaped invitation from Governor Perry to join him on August 6 at Reliant Stadium, with other "praying people," turning to Jesus and asking for God's forgiveness.  (Gaylor Decl., ¶43.)  Governor Perry's videotaped and written invitation on The Response website include indicia of the Governor's official status, including the Official Seal of the State of Texas.

The prayer rally organized by Governor Perry, according to its spokesman, Eric Bearse, Governor Perry's former Communications Director, is intended to convey "the love, grace and warmth of Jesus Christ in that assembly hall, in that arena.  And that's what we want to convey, that there's acceptance and that there's love and that there's hope if people will seek out the living Christ."  (Gaylor Decl., ¶45.)

**F.    Governor Perry's Christian Prayer Rally is Divisive and Discriminatory.**

The exclusive prayer rally by Governor Perry has been widely covered by the media and it is recognized as an extraordinary promotion of religion by a government official; the prayer rally also has become highly divisive.  (Gaylor Decl., ¶ 60.)  The Houston Clergy Council, in fact, has issued a statement condemning Governor Perry's proclamation of prayer and fasting, noting the American Family Association's anti-gay and anti-Muslim record, and saying, "We ask

11

that Rick Perry leave the ministry to us and refocus his energy on the work of governing our state."  (See Ex. 8, Gaylor Decl.)

Governor Perry's promotion and endorsement of a Christian prayer rally sends a message to the individual plaintiffs in this case that they are political outsiders and that evangelical Christians are political insiders.  (Staley Decl., ¶12; Weitzenhoffer Decl., ¶¶8-12.)  The prayer rally is clearly intended in its welcome for Christians, but not non-believers, atheists, and agnostics, such as the individual plaintiffs.  (Staley Decl., ¶¶8-17; Weitzenhoffer Decl., ¶¶8-12.)

## V.    SUMMARY OF ARGUMENT.

Governor Perry's unprecedented actions in organizing, sponsoring, endorsing, and hosting a prayer rally with an identifiably evangelical Christian organization, while exhorting all citizens to pray to Jesus Christ, clearly establishes a substantial likelihood of success on the merits.  The Governor's actions are expressly intended to promote, sponsor and endorse religion, and more particularly, Governor Perry's Christian faith.

The court's decision on the remaining injunction factors in this case follow from the initial determination that the plaintiffs will likely succeed.  Violations of constitutional rights have been deemed to constitute irreparable injury by themselves.  See Doe v. Duncanville Independent School District, 994 F.2d 160, 166 (5th Cir. 1993) (dealing with Establishment Clause Claim), cited in Alliance of Automobile Manufacturers v. Hull, 137 F. Supp. 2d 1165, 1173 (D. AZ 2001).  See also Wright, Miller and Kane, Federal Practice and Procedure:  Civil 2nd §2948.41 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

In general, moreover, a harm is irreparable when there is no adequate remedy at law, such as monetary damages.  Janvey v. Alguire, 628 F.3d 164, 179 (5th Cir. 2010).  When economic

rights are especially difficult to calculate, a finding of irreparable harm is appropriate.  See  Lake Dreams v. Taylor, 932 F.3d 1103, 1109 (5th Cir. 1991).

In the present case, injunctive relief is essentially the only remedy available to the plaintiffs for violation of the Establishment Clause by Governor Perry.  The Eleventh Amendment generally bars suits by private citizens against a State in federal court.  The doctrine of Ex parte Young, however, insures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, which is regarded as a necessary exception to Eleventh Amendment immunity.  The exception, however, allows only prospective relief. Nonetheless, under Ex parte Young, a state official may be sued in his official capacity for injunctive relief without violating the Eleventh Amendment.  Meza v. Livingston, 607 F.3d 392, 412 (5th Cir. 2010).  See also K. P. v. LaBlanc, 627 F.3d 115, 124 (5th Cir. 2010).

The threatened injury to the plaintiffs in this case outweighs any harm that will result if an injunction is granted, including because Governor Perry is not to be enjoined from his own free exercise of religion, but merely prohibited from engaging in government action sponsoring and endorsing religion.  In these circumstances, an injunction also will not disserve the public interest, but rather will make effective Establishment Clause protections.

## VI.  THE PLAINTIFFS HAVE ESTABLISHED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.  Governor Perry's Christian Prayer Rally Violates Virtually Every Premise of the Establishment Clause.

"The touchstone for our [Establishment Clause] analysis is the principle that the First Amendment mandates governmental neutrality between religion and non-religion." McCreary County v. ACLU, 545 U.S. 844, 860, 125 S. Ct. 27, 22, 162 L. Ed. 2d 729 (2005).  See also Pounds v. KTY Independent School District, 730 F. Supp.2d 636, 653 (S. D. TX 2010).  Applied to the States through the Fourteenth Amendment, the Establishment Clause "has become

synonymous with the proposition that neither the federal nor a state government, nor their entities, may 'promote or affiliate ... with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices ... and may not involve itself too deeply in such an institutions' affairs." County of Allegheny v. American Civil Liberties Union-Greater Pittsburgh Chapter, 492 U.S. 573, 590-91, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989). The Amendment "guarantees religious liberty and equality to 'the infidel, the atheist or the adherent of a non-Christian faith such as Islam or Judaism.'" Id. at 590 (quoting Wallace v. Jaffree, 472 U.S. 38, 52, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985)).

          1.     Larson v. Valente No Preference Test.

"The clearest command of the establishment clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982). This command is violated when, for example, the government elevates particular religious imagery, thus "demonstrating ... allegiance to a particular sect or creed," County of Allegheny, 492 U.S. at 603-05, or engages in favoritism, thus "failing to exercise governmental authority in a religiously neutral way." Board of Education of Kiryas Joel Village School District v. Grumet, 512 U.S. 687, 703, 114 S. Ct. 2481, 129 L. Ed. 2d 546 (1994). See also Croft vs. Perry, 624 F.3d 157, 165-66 (5th Cir. 2010).

Governor Perry's organization, sponsorship, promotion and endorsement of a Christian prayer rally in this case obviously fails the "no preference" test enunciated in Larson. The whole point of the prayer rally in this case is explicitly Christian. The Governor's promotion and endorsement of a communal prayer rally at Reliant Stadium not only discriminates against non-believers, but also evinces an unmistakable preference for the Governor's personal Christian faith. Governor Perry has expressly stated that his objective is to promote Christian prayer

through Jesus Christ.  The Governor's preference for religion over non-religion, moreover, is not a point of a debate:  Governor Perry is expressly on public record in his promotion of religion through the exercise of his official capacity.

2.      A Christian Prayer Rally Violates the Lemon Test.

Under the Establishment Clause standards set out in <u>Lemon vs. Kurtzman</u>, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971), governmental action must:  (1) have a secular purpose; (2) have a primary effect that neither advances or inhibits religion; and (3) it must not foster an excessive government entanglement with religion.  <u>Id</u>. at 612-13.  If any of the three elements is absent, the government action violates the Establishment Clause.  <u>Pounds</u>, 730 F. Supp.2d at 653, citing <u>Comer vs. Scott</u>, 610 F.3d 929 (5th Cir. 2010).  The Fifth Circuit applies the <u>Lemon</u> test, moreover, as a "general framework for analyzing Establishment Clause challenges." <u>Pounds</u>, 730 F. Supp.2d at 653, citing <u>Croft v. Perry</u>, 562 F.3d 735, 742 (5th Cir. 2009).

Governor Perry's actions, including the initiation, promotion, sponsorship and endorsement of a Christian prayer rally, obviously fails the first <u>Lemon</u> prong.  Governor Perry's actions are premised on his stated assertion that Christian religious beliefs hold the key to the problems facing government officials.  Governor Perry's actions indicate an abnegation of secular purpose.

<u>Lemons</u>' second prong asks whether, irrespective of the Governor's actual purpose, does "the practice under review in fact convey a message of endorsement or disapproval." <u>Freiler vs. Tangipahoa Parish Board of Education</u>, 195 F.3d 337, 346 (5th Cir. 1999).  This analysis is similar to the "endorsement test" articulated by the Supreme Court.  "Under either the second <u>Lemon</u> prong or the endorsement test, the Supreme Court has cautioned that a government practice may not aid one religion, aid all religions, or favor one religion over another." <u>Freiler</u>,

15

185 F.3d at 346, citing <u>County of Allegheny</u>, 492 U.S. at 605 ("whatever else the Establishment Clause may mean (and we have held it to mean no official preference even for religion over non-religion), it certainly means at the very least that government may not demonstrate a preference for one particular sect or creed, including a preference for Christianity over other religions."). "Whether the key word is 'endorsement,' 'favoritism' or 'promotion,' the essential principle remains the same.  The Establishment Clause at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community." <u>Pounds</u>, 730 F. Supp.2d at 654, citing <u>Allegheny</u>, 492 U.S. at 593-94, quoting <u>Lynch vs. Donnelly</u>, 465 U.S. 668, 687, 104 S. Ct. 1355, 79 L. Ed. 2d 604 (1984) (O'Connor J., concurring).)"

Governor Perry's actions in this case, under either the primary effect or endorsement test, undeniably violate the Establishment Clause.  The unambiguous statements by Governor Perry evidence that the prayer rally sponsored by the Governor is for the very purpose of promoting Christian religious beliefs as a solution to problems facing the State and the nation.  The Governor's statements in his proclamation of a Day of Prayer and Fasting, which expressly references the prayer rally at Reliant Stadium, further supports the government's endorsement of religion.  Governor Perry's video and audio invitations urging citizens to attend the prayer rally also establish the primary effect of the Governor's actions, as does his co-hosting of the prayer rally with an identifiably conservative evangelical Christian organization, i.e. the American Family Association.  Finally, the reaction to the governor's actions indicate that reasonable observers, both those who support and oppose the Governor's prayer rally, perceive his actions as endorsing religion.  For that very reason, in fact, the Governor's actions have become divisive, between religion and religion, and between religion and non-religion.

"Lynch v. Donnelly tells us that the government runs afoul of the Establishment Clause when it endorses a particular religious belief, because endorsement sends a message to non-adherents that they are outsiders, not fully members of the political community and an accompanying message to adherents that they are insiders, favored members of the political community." Croft, 624 F.3d at 169. This endorsement analysis is similar to the second prong of the Lemon test, under which the Court reviews government action to insure that conduct does not "in fact convey a message of endorsement or disapproval," thereby "aiding one religion, aiding all religions, or favoring one religion over another." Id. at 169, quoting Feiler, 185 F.3d at 346. Here, given the context of Governor Perry's actions, his promotion and sponsorship of a prayer rally, clearly fails under Lynch's endorsement test, and fails to satisfy Lemon's second prong.

Finally, Governor Perry's actions create an excessive government entanglement with religion, thereby violating the third Lemon prong. Governor Perry has actually teamed up with a specific religious viewpoint, espoused by the American Family Association, in promoting and sponsoring the prayer rally at Reliant Stadium on August 6. Governor Perry's own website links to the official website for the prayer rally, which is maintained by the American Family Association. The co-sponsoring organization, in turn describes its mission, objectives and guiding principles, in evangelical Christian terms. Governor Perry and the American Family Association, moreover, are both identified as hosts for the prayer rally, with Governor Perry identified as the "initiator" of the event.

No delineation exists between Governor Perry and the American Family Association in their promotion, sponsorship and endorsement of the August 6th prayer rally. By sponsoring a specific event in conjunction with an evangelical Christian organization, therefore, Governor

Perry has created an immutable entanglement between government and religion in this case. The Governor is using his office to promote a particular religious agenda, and by preferentially tag-teaming with the American Family Association, he receives the benefit of having his own prayer rally financially underwritten by a favored proselytizer. When the boundaries between government and religion are so intertwined as in this case, the third prong of the <u>Lemon</u> test is decidedly violated.

**B.  Government Speech Endorsing Religion is Prohibited Under the Establishment Clause.**

This is not a case about free speech under the First Amendment, as Governor Perry has insinuated in public comments. Government speech endorsing religion is firmly prohibited under the Establishment Clause. The Fifth Circuit Court of Appeals has long acknowledged the "crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." <u>Morgan v. Swanson</u>, 627 F.3d 170, 182 (5th Cir. 2010), quoting <u>Board of Education v. Westside Community School v. Mergens</u>, 496 U.S. 226, 250, 110 S. Ct. 2356, 110 L. Ed.2d 191 (1990).

The United States Supreme Court also continues to recognize the distinction between government speech endorsing religion and other government speech. In <u>Pleasant Grove v. Summum</u>, 555 U.S. 460, 129 S. Ct. 1125, 1131-32 (2009), the Court recently acknowledged that although the Free Speech Clause of the First Amendment does not apply to government speech, this "does not mean that there are no restraints on government speech. For example, government speech must comport with the Establishment Clause."

Governor Perry, in the present case, has clearly engaged in government speech promoting and sponsoring the endorsement of religion. The Governor, of course, has gone even further in

this case by organizing a specific religious extravaganza that is exclusionary of atheist and non-believers, as well as by exhorting citizens to specifically pray to the Lord Jesus Christ. Even to the extent that only the Governor's speech was at issue, however, an Establishment Clause violation would exist in this case. The Governor, in his official capacity, has expressed a preference and endorsement of religion over non-religion, and more particularly, of the Christian faith over all others. The Governor's speech is not protected in this instance by the Free Speech Clause of the First Amendment.

**C.  Actual Legal Coercion is Not a Required Element of an Establishment Clause Violation.**

Coercion is not a necessary element under the Establishment Clause, contrary to Governor Perry's "backup" response to his critics. The Supreme Court has consistently recognized that a violation of the Establishment Clause is not predicated on coercion. <u>See County of Allegheny v. American Civil Liberties Union</u>, 492 U.S. 573, 597 n. 47 (1989), citing <u>Committee for Public Education and Religion Liberty v. Nyquist</u>, 413 U.S. 756, 786 (1973). <u>See also</u> <u>Engel v. Vitale</u>, 370 U.S. 421, 430 (1962); <u>Abington School District v. Schempp</u>, 374 U.S. 203, 222-23 (1963); and <u>Lee v. Weisman</u>, 505 U.S. 577, 604-05 (1992) (J. Blackmun, concurring). In <u>Allegheny</u>, 492 U.S. at 597 n. 47, the Court expressly refused to reconsider its prior holdings and proceeded "to apply the controlling endorsement inquiry, which does not require an independent showing of coercion." <u>See also</u> <u>Meltzer v. Board of Public Instruction of Orange County, Florida</u>, 548 F.2d 559, 579 (5th Cir. 1977).

Governor Perry presumes incorrectly that he may initiate, promote, sponsor and endorse specific religious events with impunity as long as atheists and non-believers are not legally coerced to attend or to otherwise pray. The Establishment Clause prohibits governmental endorsement of religion every bit as much for events organized with and for political insiders. In

fact, the Governor's actions in this case make religion politically relevant, which is precisely one of the reasons for the Establishment Clause.

### D.    Governor Perry's Endorsement of Religion is Directed at the Individual Plaintiffs.

"The use of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff." Washegesic v. Bloomingdale Public Schools, 33 F.3d 679, 682 (6th Cir. 1994).  In the present case, Governor Perry has violated this maxim by publicly promoting and encouraging all citizens to attend an explicitly Christian prayer rally. The Governor has promoted and encouraged attendance at a specific religious event that he has sponsored, promoted and endorsed.  The plaintiffs in this case, therefore, are intended targets for the Governor's Christian blandishments, including as recipients of unsolicited robo-calling that includes the Governor's personal invitation to the Christian prayer rally.

The rally, however, is intended for "praying folks," and more particularly, Christian churchgoers.  As a result, the Governor's prayer rally discriminates against the plaintiffs by conditioning attendance on a willingness to engage in Christian prayer -- or at least to quietly tolerate such prayer.

The plaintiffs are made to feel like political outsiders and as second class citizens in the Texas political community as a result of Governor Perry's exclusive Christian prayer rally. There can be no doubt that this type of non-economic injury is one of the most serious consequences of discriminatory government action.  Such injury accords a basis for judicial redress to those, like the plaintiffs, who are personally denied equal treatment by the challenged discriminatory conduct of Governor Perry.  Their personal right to be treated with equal dignity and respect are implicated in this case by the Governor's Christian prayer rally, where religion is

the sole criterion of governmental advocacy.  Cf. <u>City of Richmond v. J. A. Croson</u>, 488 U.S.

469, 493, 109 S. Ct. 706, 102 L. Ed.2d 854 (1989).

The Supreme Court's equal protection jurisprudence is instructive in assessing the direct

injury caused to the individual plaintiffs.  When the government erects a barrier that makes it

more difficult for members of one group to take advantage of an opportunity than it is for

members of another group, an "injury in fact" occurs.  The injury is the denial of equal treatment

resulting from the imposition of the barrier.  Here, Governor Perry's prayer rally scheduled for

August 6 effectively and directly discriminates against atheists, freethinkers, agnostics, and even

non-Christians, by promoting an event that is exclusively Christian in its design and intent.

The plaintiffs are part of the intended target of the Governor's speech promoting religion;

they have been exposed to the Governor's encouragement that they engage in Christian prayer;

they are obviously excluded from welcome participation at the prayer rally scheduled for August

6 on the basis of religious affiliation; and they have been made to feel like political outsiders.  In

these circumstances, the individual plaintiffs have sustained a direct and judicially redressable

injury.

> **E.      Governor Perry's Alignment with the American Family Association
>          Preferentially Benefits FFRF'S Competitor.**

Governor Perry's alignment with the American Family Association does more than

entangle the Governor in religion.  By lending the prestige and credibility of the Governor's

Office to the prayer rally co-hosted with the American Family Association, the Governor

preferentially benefits FFRF's own competitor.

When the government takes a step that benefits one's rival and makes it easier for a rival

to compete against another, the disadvantaged party has grounds to complain about such

favoritism.  <u>Sherley v. Sebelius</u>, 610 F.3d 69, 72 (D.C. Cir. 2010).  Discriminatory treatment to

promote one viewpoint (Christian) is a harm that qualifies as an actual injury.  Cf. Planned Parenthood of South Carolina v. Rose, 361 F.3rd 786, 790 (4th Cir. 2004).

This "level playing field" analysis, though typically seen in equal protection cases, also applies in First Amendment cases.  Id. at 790.  Just as a plaintiff claiming discrimination under the Fourteenth Amendment has standing to seek a level playing field, so too does a plaintiff claiming viewpoint discrimination under the First Amendment.  Id.  In short, where, as here, plaintiffs challenge governmental action on the ground that it promotes an opposing viewpoint above their own, they suffer a cognizable injury that is judicially redressable.  Id.

The defendant cannot dispute that co-sponsoring a Christian prayer rally with a favored evangelical organization confers an advantage not available to FFRF.  As a result, FFRF has a substantial likelihood of success on the merits of its own organizational claim that Governor Perry's actions preferentially confer a governmental advantage on the basis of religious criteria.  Just as government speech endorsing religion is prohibited by the Establishment Clause, so too is governmental preference for a particular religious organization.  FFRF is directly affected in this case by Governor Perry's discriminatory preference for religion, and for the American Family Association.

## VII.    GOVERNOR PERRY'S ACTIONS IRREPARABLY HARM THE PLAINTIFFS.

The plaintiffs' injuries in this case cannot be readily addressed with pecuniary damages.  Their injuries, as a result, constitute irreparable harm for purposes of determining whether a preliminary injunction is appropriate.  Tort law is solicitous of, among other things, a plaintiff's well-being.  Contract law protects plaintiffs' business expectations.  "But the Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss.  Rather 'the spiritual

value-laden beliefs'of the plaintiffs are often most directly affected by an alleged establishment of religion." <u>Suhre v. Haywood Co.</u>, 131 F.3d 1080, 1086 (4th Cir. 1997).

Damages also are not a practical remedy in this case because of Governor Perry's Eleventh Amendment immunity. Under the <u>Ex parte Young</u> doctrine, prospective injunctive relief is the only effective remedy available to these plaintiffs. Without a preliminary injunction, the plaintiffs will potentially have no meaningful remedy. Governor Perry's continued actions in promoting, sponsoring and endorsing the August 6th prayer rally, therefore, constitute irreparable harm.

## VIII. GOVERNOR PERRY WILL NOT BE HARMED BY A PRELIMINARY INJUNCTION, NOR WILL THE PUBLIC INTEREST BE DISSERVED.

Governor Perry will not be harmed by an injunction prohibiting him from continuing to promote, sponsor and endorse a Christian prayer rally. Governor Perry may still freely exercise his Christian faith, but he has no protectable interest in promoting and endorsing religion in his official capacity as Governor of Texas. The American Family Association, for its part, may proceed to sponsor and host the August 6th prayer rally as a private function without government sponsorship. That is how it should be according to the Establishment Clause.

The interest of the public will not be disserved if the prayer rally proceeds as a non-government event. The prestige and credibility of government is not intended to be used in support of religion, under the Establishment Clause. The combination of governmental support for religion is a dangerous mix, as frequently attested to by history. The public interest, therefore, is positively served by enjoining Governor Perry from aggressively advocating his personal Christian faith as a matter of official state policy.

## CONCLUSION

The plaintiffs respectfully request the Court to issue a preliminary injunction prohibiting Governor Perry from further promoting, sponsoring and/or endorsing the August 6th prayer rally scheduled for Reliant Stadium in his official capacity as governor. The plaintiffs do not request the Court to enjoin Governor Perry from attending the event, but he should be enjoined from participating as a speaker in his official capacity.

Dated this 25th day of July, 2011.

Respectfully submitted,

LAW OFFICE OF RANDALL L. KALLINEN PLLC
By:

*/s/ Randall L. Kallinen*
Randall L. Kallinen, State Bar No. 00790995
Federal Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: (713) 320-3785
Facsimile: (713) 893-6737
E-mail: attorneykallinen@aol.com

BOARDMAN LAW FIRM
By:

*/s/ Richard L. Bolton*
Richard L. Bolton, Esq., Bar No. 1012552
Boardman, Suhr, Curry & Field LLP
1 South Pinckney Street, 4th Floor
P. O. Box 927
Madison, Wisconsin 53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
E-mail: rbolton@boardmanlawfirm.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE


     I hereby certify that on July 25, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification electronically to all attorneys of record.


                    /s/ Randall L. Kallinen__
                    Randall L. Kallinen


F:\DOCS\WD\26318\27\A1234837.DOCX