UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-11-2585 |
| TEXAS GOVERNOR RICK PERRY, | § § | |
| *Defendant*. | § § | |

### ORDER

Before the court is a motion for preliminary injunction filed by plaintiffs, seeking to enjoin Texas Governor Rick Perry from "promoting, sponsoring or endorsing the prayer rally scheduled for August 6, 2011, at Reliant Stadium in Houston, Texas." Dkt. 9.  After a review of the motion, the response, the record, and the applicable law, the court concludes that plaintiffs lack Article III standing.  Accordingly, the motion for preliminary injunction is DENIED, and this case is DISMISSED WITH PREJUDICE.

### BACKGROUND

On May 23, 2011, Governor Perry signed a proclamation declaring August 6, 2011, as "A Day of Prayer and Fasting for Our Nation" that reads, in its entirety, as follows:

> In 1775, the Continental Congress asked the colonies to join in prayer, seeking wisdom as they faced the responsibility and opportunity of building a new nation. As leaders of that young nation assembled in 1787 to craft a Constitution, Benjamin Franklin implored the framers to pray for guidance, famously declaring, "The longer I live, the more convincing proofs I see of this truth: that God governs in the affairs of men."  Decades later, during a time of national turmoil, President John Adams declared "a day of solemn humiliation, fasting and prayer," asking citizens of all faiths to pray for America's protection from danger.  Later, as civil war tore our young country apart, President Abraham Lincoln proclaimed a day of national fasting and prayer, saying "It behooves us ... to humble ourselves before the offended

>Power, to confess our national sins, and to pray to the God that made us." During World War II, with our troops locked in battle on the beaches of France, President Franklin D. Roosevelt led the nation in prayer, "As we rise to each new day, and again when each day is spent, let words of prayer be on our lips, invoking Thy help to our efforts."
>
>Given the trials that have beset our country and world - from the global economic downturn to natural disasters, the lingering danger of terrorism and wars that endanger our troops in Iraq, Afghanistan and theaters of conflict around the globe, and the decline of our culture in the context of the demise of families - it seems imperative that the people of our nation should once again join together for a solemn day of prayer and fasting on behalf of our troubled nation.
>
>In times of trouble, even those who have been granted power by the people must turn to God in humility for wisdom, mercy and direction.  In the spirit of the Book of Joel, Chapter 2, Verses 15-16, I urge a solemn gathering of prayer and fasting.  As those verses admonish: "15 Blow the trumpet in Zion, declare a holy fast, call a sacred assembly... 16 Gather the people, consecrate the assembly..."  As Jesus prayed publicly for the benefit of others in John 11:41-42, so should we express our faith in this way.
>
>THEREFORE, I invite my fellow Texans to join me on August 6 at Reliant Stadium in Houston, as we pray for unity and righteousness - for this great state, this great nation and all mankind.  I urge Americans of faith to pray on that day for the healing of our country, the rebuilding of our communities and the restoration of enduring values as our guiding force.
>
>THEREFORE, I, Rick Perry, Governor of Texas, do hereby proclaim August 6, 2011, to be
>
>A Day of Prayer and Fasting for Our Nation
>
>in Texas, and urge the appropriate recognition whereof.
>
>In official recognition whereof, I hereby affix my signature this the 23rd day of May, 2011.
>
>RICK PERRY
>Governor of Texas

Dkt. 1-1.  Plaintiffs filed a complaint on July 13, 2011, challenging the proclamation, and challenging Governor Perry's involvement with the American Family Association ("AFA") in promoting and sponsoring the prayer rally, which has been identified on a website created by the

2

AFA as "The Response: a call to prayer for a nation in crisis." Dkt. 1-3. A public letter by Governor Perry is posted on the website, the website is "linked" to the Governor's official web site, and Governor Perry has recorded a "videotaped invitation" to the event that is available on the AFA website. Dkt. 1, ¶¶ 21, 23, 34. The letter and videotaped invitation each contain Govenor Perry's statement that "[a]s a nation, we must come together and call upon Jesus to guide us through unprecedented struggles, and thank Him for the blessings of freedom we so richly enjoy." Dkt. 1-2. The letter concludes, "I sincerely hope you'll join me in Houston on August 6th . . . There is hope for America. It lies in heaven, and we will find it on our knees." *Id.*

Plaintiffs also assert that "unsolicited recorded calls" have been made promoting the rally and using Governor Perry's recorded invitation. Dkt. 12-2 ¶ 8.[1] However, the "costs associated with the prayer rally" are allegedly being paid by the American Family Association ("AFA").[2] Dkt. 1 ¶ 69.

Plaintiffs are the Freedom From Religion Foundation, Inc. ("FFRF"), a non-profit organization "that advocates for the separation of state and church and educates on matters of non-theism," and five individuals who are members of that organization and who reside in the Houston area. Dkt. 1 ¶¶ 8-9. Plaintiffs describe themselves as "non-believers" and they assert that the Governor's actions send "a message to that believers in religion are political insiders–and non-believers [like plaintiffs] are political outsiders" and, in fact, make plaintiffs feel like political

---

[1] Plaintiff Weitzenhoffer states somewhat cryptically that "unsolicited telephone calls that include Governor Perry's personal promotion of the prayer rally have been received, at least in the Houston area, one of which I have personally heard on July 20, 2011." Dkt. 12-2 ¶ 7. He does not assert whether he received the call or simply heard it replayed.

[2] The AFA is a non-profit, non-denominational Christian organization whose mission "is to inform, equip, and activate individuals to strengthen the moral foundations of American culture" by "spreading the Word of personal transformation through Jesus Christ." Dkt. 20 at 3.

3

outsiders.  *Id*. ¶¶ 10, 62, 63.  Two individual plaintiffs have provided declarations stating that they are "upset by the Governor's promotion of a prayer rally" and that they "feel excluded and demeaned" and as if they are "political outsiders" due to their non-belief and the Governor's call for prayer.  Dkts. 12-1, 12-3.

Plaintiffs request relief including an order "enjoining [Governor Perry's] further involvement" in the "organization, promotion and participation" in the Response.  Dkt. 1 at 18.  Plaintiffs have moved for a preliminary injunction, and have clarified that they "do not seek an injunction prohibiting Governor Perry from privately exercising his religious beliefs.  The plaintiffs do not even seek an injunction against Governor Perry's attendance at the August 6 prayer rally.  Instead, the plaintiffs seek an order prohibiting the defendant from engaging in official sponsorship of religion, including by continued promotion of the event.  The plaintiffs further request an order from the court prohibiting the defendant from participating in the official program of the prayer rally, such as by reading his official prayer proclamation or otherwise being part of the organized agenda."  Dkt. 10 at 2.

Defendant has filed a response to the motion for preliminary injunction, and challenges plaintiffs' Article III standing to bring suit.  Dkt. 15.  The AFA filed a motion to intervene, and, in anticipation of being granted such status, a motion to dismiss.  Dkts. 17, 19.

A hearing was held on July 28, 2011.  At the close of the hearing, the court ruled that plaintiffs lack standing under Article III.  The court denied the motion for preliminary injunction and dismissed the lawsuit.[3]  This written opinion contains further explanation of the court's ruling.

---

[3] While the hearing was being conducted, the American Center for Law and Justice filed a motion for leave to file an amicus brief.  Dkt. 22.  Since the court has already made its ruling, the motion is moot.

## LEGAL STANDARD

The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. AMEND. 1. The Establishment Clause applies to the states through the Fourteenth Amendment. See *Wallace v. Jaffree*, 472 U.S. 38, 42 n.10, 105 S.Ct. 2479 (1985) (citing *Everson v. Bd. of Educ.*, 330 U.S. 1, 15-16, 67 S.Ct. 504 (1947)).

The Fifth Circuit has emphasized the importance of determining standing to sue in cases asserting a constitutional question. *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007) (*en banc*). "Constitutional standing requires that the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts." *Doe*, 494 F.3d at 496 (footnote omitted).

The requirements for standing in an Establishment Clause case were recently recounted by the Fifth Circuit prior to its rejection on the merits of a challenge to the Texas law requiring a moment of silence in schools. *Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009). The court's discussion of standing prior to its ruling on the merits is instructive here:

> Constitutional standing has three elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Alliance Defense Fund (ADF) amicus brief and Perry argue that the Crofts have not stated any sufficient injury, and so lack standing to bring this case.
>
> "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The question then becomes whether the Crofts have alleged a personal loss of First Amendment freedoms. **It is not enough simply to argue that there has been some violation of the Establishment Clause; they must allege a personal violation of rights.** [footnote omitted] *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 n. 22, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

*Id.* at 745 (emphasis added). This same proposition was discussed in *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007), in the context of the Supreme Court's ruling that plaintiffs lacked taxpayer standing to challenge the use of federal funds to promote President Bush's "faith-based initiatives." Justice Alito, writing for the plurality, noted "the basic constitutional principle" that:

> "a plaintiff raising only a generally available grievance about government–claiming only harm to his and every citizen's interest in the proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large–does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

551 U.S. at 601, 127 S.C.t at 2563-64. Thus, the Supreme Court and the Fifth Circuit have clearly required that plaintiffs in Establishment Clause cases assert a "personal violation" of their rights–an alleged violation of the Establishment Clause by a state actor untethered to an injury specific to the plaintiffs does not confer standing. *Id.*

The plaintiffs bear the burden of proof of standing, which varies according to the stage of the litigation when a ruling on standing occurs. *Croft*, 562 F.3d at 746-47. Here, the court is considering the question on the pleadings, and will apply the standard for jurisdictional questions brought at the pleading stage under Rule 12(b)(1). The court will, accordingly, accept the facts alleged in the complaint and set forth in plaintiffs' declarations as true for purposes of determining standing.

## ANALYSIS

The court noted from the bench its obligation to assure itself that it has the power to act at the outset of any litigation. Article III of the Constitution limits the power of the federal courts to adjudication of "cases or controversies." The Supreme Court has repeatedly, and emphatically, cautioned courts not to proceed in a lawsuit until the court is satisfied that it has been presented with

6

a case or controversy within the meaning of Article III. The importance of this court acting only within the scope of the power it has been granted by the Constitution is reinforced in this case because plaintiffs assert a serious claim—a violation of the Establishment Clause of the Constitution, and because they seek two types of specific injunctive relief that have never been granted by a federal court: (1) an injunction barring a state governor from issuing a proclamation inviting people to pray; and (2) an injunction limiting the manner in which a state governor may participate in a religious function.

The Seventh Circuit also recently addressed a situation that had, until the lower court's order, never before occurred–an order enjoining a sitting President of the United States from declaring a National Day of Prayer. *FFRF v. Obama*, 641 F.3d 803, 806 (7th Cir. 2011). FFRF made standing arguments on behalf of its members in that case that mirror those made here and, in reversing the district court's finding of standing in that case, Chief Judge Easterbrook noted that the Presidential proclamation of a day of prayer speaks to all citizens, not just citizens of faith or of a particular faith, but that "no one is obliged to pray, any more than a person would be obliged to hand over his money if the President asked all citizens to support the Red Cross and other charities." *Id*. at 806. The same can be said in this case of each of the statements made by Governor Perry that are the subject of the complaint: Whether in the official proclamation, a statement made available in print or by video on a website, or otherwise, Governor Perry has done nothing more than invite others *who are willing to do so* to pray. Like President Obama's proclamation, Governor Perry's statements are requests, not commands, and no injury flows from a mere request. Indeed, it is the nature of the political system that an executive "frequently calls on citizens to do things that they prefer not to do—to which, indeed, they may be strongly opposed on political or religious grounds"— but this does not confer Article III standing to sue. *Id*.

7

The Seventh Circuit provided a second reason for rejecting standing with respect to invitations to pray–feelings of exclusion or being unwelcome arising from an invitation "to engage in a religious observance that is contrary to their own principles" are likewise not sufficient to confer standing because they are nothing more than the "'value interests of concerned bystanders.'" *Id*. at 807 (citing *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405 (1973)). That is all that the plaintiffs here have alleged concerning the various iterations of Governor Perry's invitation to pray. They have not shown a particularized, concrete injury from these invitations.

Plaintiffs also assert that Governor Perry's attendance at the event, as governor of Texas, causes them injury. However, this places plaintiffs even more firmly in the category of asserting "value interests of concerned bystanders" or a "generalized grievance available to the public at large" because attendance at the event is voluntary. Indeed, one plaintiff has alleged that she will be "outside" to express her "disapproval." If "mere abstract knowledge" of an invocation at a government function is inadequate to confer standing, *Doe*, 494 F.3d at 497, then mere knowledge that Governor Perry will participate in a prayer rally is likewise insufficient to confer standing.

Another portion of the Seventh Circuit's opinion is also instructive in this case, and it expands upon the second basis for rejecting standing:

> If a perceived slight, or a feeling of exclusion, were enough, then Michael Newdow would have had standing to challenge the words 'under God' in the Pledge of Allegiance, yet the Supreme Court held that he lacks standing. Similarly, if offense at a public official's support of religion were enough, the plaintiffs would have had standing in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.E2d.2d 700 (1982). A federal agency donated surplus property to an educational institution that was supervised by a religious order. The Court held that persons who objected to the transfer lacked standing, because the transfer did not injure them. Everything that the plaintiffs say in support of their own claim of injury either was, or could have been, said in *Valley Forge* as well.

8

641 F.3d at 806. Indeed, the support offered to religion by the state in *Valley Forge* is certainly as tangible as the support FFRF alleges has occurred in this case. If offense to the conduct of the government did not suffice in *Valley Forge*, then it does not suffice here no matter how deep plaintiff's feelings of exclusion or upset. This case, like *Obama*, involves merely a "perceived slight, or a feeling of exclusion" by plaintiffs. The court agrees with the Seventh Circuit that "offense at a public official's support of religion" is simply not enough to confer standing. "All [plaintiffs] have is a disagreement with the [Governor Perry's] action" giving rise to "a feeling of alienation" which cannot suffice as injury in fact. *Id*. at 807-08.

Counsel for plaintiffs argued at the hearing that a finding that there is no standing would make the Establishment Clause ineffectual. One need only look to the amount of Establishment Clause litigation that has occurred over the last several decades, including a host of cases where standing has been found to exist, and relief granted, to reject this argument. Nonetheless, it may well be that there is **no one** with standing to sue in this case, but this does not change the analysis, because "abstract injury in nonobservance of the Constitution" by government officials is not injury in fact even if this is the result. *Id*. (citing *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223 n.13, 94 S. Ct. 2925 (1974)). Further, as Justice Alito noted in *Hein*, taxpayer and citizen standing is not meant to "transform federal courts into forums for taxpayer's generalized grievances about the conduct of government" nor to "deputize federal courts as 'virtually continuing monitors of the wisdom and soundness of Executive action,' [because] that, most emphatically, is not the role of the Judiciary." 551 U.S. at 611, 127 S.Ct. at 2570.

The court notes that the plaintiffs are not without a remedy. Persons offended by an elected official's speech are free to give voice to their feelings of offense and exclusion in a number of ways. They can choose not to attend and not to pray. They can also exercise their free speech rights

and their right to vote, among others. Therefore, this court's finding that plaintiffs lack standing is not a denial of a remedy—it is just a denial of remedy in the courts.

## CONCLUSION

The court therefore finds that, even accepting all of the factual allegations in the complaint and in the declarations by plaintiffs as true, they have not asserted facts that would support a "concrete and particularized" injury as required for Article III standing.

It is hereby ORDERED that the motion for preliminary injunction (Dkt. 9) is DENIED. This case is DISMISSED for lack of jurisdiction.

The remaining motions (Dkts. 17, 19 and 22) are DENIED AS MOOT.

Signed at Houston, Texas on July 28, 2011.

_____
Gray H. Miller
United States District Judge